U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

APR 2 8 2009

ROBERT H. SHEMWELL, CLERK
BY _____
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| VERDELL RANKIN (D.O.C.#326516) | DOCKET NO. 08-CV-1860; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| CORRECTIONS CORPORATION OF AMERICA, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION TO DISMISS CERTAIN DEFENDANTS AND CLAIMS

Before the court is the *pro se* civil rights complaint (42 U.S.C. § 1983) of Plaintiff Verdell Rankin, filed *in forma pauperis* on November 21, 2008. Rankin is an inmate in the custody of the Louisiana Department of Public Safety and Corrections and is currently housed at the Winn Correctional Center ("WCC"), in Winnfield, Louisiana. Plaintiff names as defendants Corrections Corporation of America (CCA), Lieutenant Carpenter, Officer Carpenter, Lieutenant Braxton, Officer Triplet, Cheryl Wiley, Officer Smith, Warden Tim Wilkinson, Captain Coleman, and Virgil Lucas. Plaintiff claims that the defendants acted with deliberate indifference in failing to protect him from violence at the hands of other inmates.

This matter has been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 626 and a standing order of this Court.

### FACTUAL BACKGROUND

Plaintiff alleges that, on September 1, 2008, WCC was on lock-

down because of the threat from Hurricane Gustav. Lt. Braxton, Lt. Carpenter, and Ash Unit manager Cheryl Wiley were in charge of the Ash Unit floor. When it was time for daily pill call, the officers instructed inmates who receive medication to stand by their doors so the nurses could dispense medication through the bars.

As the pill cart was making its way to Ash D1 tier (where Plaintiff resides), he noticed Officer Carpenter unlock and open Ash A2, letting inmate Derrick Edwards out of his cell and over to Ash D1 to visit his "homosexual partner," Inmate Elverdis Breedlove, at the cell bars. Plaintiff alleges that Edwards and Breedlove are "known lovers" at WCC; Breedlove's bunk is next to Plaintiff's.

After Edwards visited with Breedlove, Edwards stuck his hand through the bars and hit Plaintiff on the face. Plaintiff reacted by throwing his water in Edwards' face. Plaintiff then went to put his shoes on and heard Edwards tell Breedlove to "wipp him." Inmate Breedlove ran up behind Plaintiff and hit him in the head. The two "scuffled on the floor," and Edwards stood outside the bars watching the fight, "anxiously trying to get in the D1 tier." Plaintiff claims that the defendants stood by and watched the fight take place "like they were watching a big screen TV." Inmates on the D1 tier broke up the fight, and Plaintiff and Breedlove went back to their side-by-side bunks.

When Plaintiff put on his shoes, Breedlove grabbed a sharp

2

object and attacked Plaintiff, cutting Plaintiff in the face and trying to kill him. Another inmate was able to break up the fight. Plaintiff alleges that Shift Assistant Lt. Carpenter was laughing and watched as the violent fight took place. Then, Shift Assistant Lt. Carpenter opened up the D1 tier, allowing Edwards onto the tier. Lt. Carpenter told Edwards to "go ahead and get [Plaintiff]." Plaintiff alleges that Edwards then "unleashed" on him, dealing devastating blows with a sharp object in the palm of his fist. Plaintiff states that Edwards caused major visible injuries to his face and caused a very bloody scene. Lt. Carpenter and Officer Carpenter allowed the fight become "horribly violent;" then, Lt. Carpenter broke up the fight.

Plaintiff claims that the defendants subjected him to cruel and unusual punishment and failed to protect Plaintiff from serious harm by Edwards and Breedlove.

Plaintiff complains that Officer Carpenter should not have opened the Ash A2 tier allowing Edwards to go visit Breedlove in the first place, and that Lt. Carpenter should not have opened the Ash D1 tier "with the evil intent for Inmate Edwards to inflict harm." Plaintiff claims that he previously complained to Unit manager Cheryl Wiley about Edwards visiting Breedlove and had requested that he be moved to a bed away from Breedlove. Plaintiff complains that Braxton should have monitored the tiers more closely and that Officers Carpenter and Smith should have followed security

3

procedures. He complains that Wilkinson, Coleman, and Lucas released Inmate Breedlove back on the compound without Plaintiff's consent.

Plaintiff further alleges that, on October 26, 2008, Officer Triplet informed Lt. Vernon that a "shank knife" was under Plaintiff's foot locker. Vernon found the shank and Plaintiff was punished. Plaintiff alleges that he was set up by Officer Triplet. On October 28, 2008, Plaintiff was sentenced to 10 days isolation and to the working cell blocks. However, the next day, Wilkinson, Virgil Lucas, and Coleman dropped all disciplinary charges against Plaintiff and released him back into the general population. A few hours later, they released Edwards, too. Plaintiff claims that he is in danger now that he is back in the general population with his two assailants.

## LAW AND ANALYSIS

Plaintiff claims that the defendants were deliberately indifferent his safety. To succeed on a failure-to-protect claim, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm and that the prison officials acted with deliberate indifference to the inmate's safety." Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir. 2004)(internal quotation marks and citation omitted). "An official is deliberately indifferent when he **knows of and disregards an excessive risk to inmate health or safety;** the official must both

be **aware of facts from which the inference could be drawn** that a substantial risk of serious harm exists, and he must **also draw the inference**." Id. (internal quotation marks and citation omitted)(emphasis added). Plaintiff has presented allegations that some of the defendants were deliberately indifferent to his safety.

1. CCA

Plaintiff attempts to hold CCA liable under §1983 for the acts of its employees. However, just as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, so is a private corporation, like CCA, not vicariously liable under §1983 for its employees' deprivations of others' civil rights. Monell v. Dep't of Social Services, 436 U.S. 658, 691 (1978). However, a private corporation can be held liable under §1983 when an official policy or custom of the corporation causes or is the "moving force of the constitutional violation." Plaintiff does not present any allegations that an official policy or custom of CCA was the "moving force" behind its employees' alleged deprivation of Plaintiff's constitutional rights. Accordingly, Plaintiff's claims against CCA should be dismissed as frivolous.

2. Officers Smith and Braxton

Plaintiff has not alleged deliberate indifference by Officers Smith or Braxton. The only factual allegation raised against Officer Smith is that he should have followed security procedures

5

more carefully. The only allegation against Braxton is that he should have monitored the tiers more closely.

"Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir.1997) citing Estelle v. Gamble, 429 U.S. 97, 106 (1976). It does not encompass negligent behavior or even gross negligence, only conscious, callous, or deliberate indifference. See Davidson v. Cannon, 474 U.S. 344, 348 (1986), Johnston v. Lucas, 786 F.2d 1254 (5th Cir. 1986). To constitute deliberate indifference, the defendants must have had a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294 (1991).

Because he has not alleged that Smith or Braxton acted with deliberate or conscious indifference, Plaintiff's claims against them should be dismissed.

3. Officer Triplet

Plaintiff's alleges that Triplet set him up by informing Officer Vernon that Plaintiff had a shank under his foot locker, which Vernon subsequently found. Plaintiff claims that he was not guilty of the offense. Regardless, he alleges that the disciplinary charge against him was dropped, and he was not punished. Plaintiff has not alleged any injury resulting from this incident. Under § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other

6

correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Harper v. Showers, 174 F.3d 716, 719 (5th Cir.1999) (quoting Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir.1997)). His claim against Triplet should be dismissed.

4. Injunctive Relief

Plaintiff asks that the court order the warden to remove inmates Breedlove and Edwards from WCC. He also seeks a court order terminating the defendants from their positions at WCC. Federal courts are not prison managers. Ordinarily, courts accord great deference to the internal administrative decisions of prison officials. Royal v. Clark, 447 F.2d 501 (5th Cir. 1971); Krist v. Smith, 439 F.2d 146 (5th Cir. 1971); Haggerty v. Wainwright, 427 F.2d 1137 (5th Cir. 1970). In fact, the Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration." Shaw v. Murphy, 532 U.S. 223, 230 (2001); accord Washington v. Harper, 494 U.S. 210, 223-24 (1990); Turner v. Safley, 482 U.S. 78, 84-85 (1987). Additionally, classification of prisoners is left to the discretion of prison officials, Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983), and McCord v. Maggio, supra, at 1251; Luong v. Hatt, 979 F. Supp. 481, 483-484 (N.D. Tex. 1997). It would be against the public interest to issue an injunction based solely on Plaintiff's disagreement with the administration of the prison.

7

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's claims against the following defendants be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B) and 1915A(b)(1):

>Corrections Corporation of America,
>Officer Smith,
>Lieutenant Braxton, and
>Officer Triplet.

It is also recommended that Plaintiff's request for an order firing all defendants and an order to transfer Inmate Breedlove and Inmate Edwards be **denied and dismissed as frivolous.**

Service of process will be ordered on the remaining defendants.

Under the provisions of 28 U.S.C. §636(b)(1)©) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P.**

6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 28th day of April, 2009.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE